# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHANN MEADOWS, | Case No.  1:11-cv-00257-DAD-JLT (PC) |
| Plaintiff, | FINDINGS AND RECOMMENDATION TO DENY DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| v. | |
| DR. REEVES, | (Doc. 74) |
| Defendant. | OBJECTIONS DUE WITHIN 30 DAYS |

Plaintiff claims Defendant sexually assaulted her during a gynecological examination on July 22, 2009, in violation of the Eighth Amendment.  Defendant moves for summary judgment asserting that rather than assaulting Plaintiff, he was merely attempting to perform an endometrial biopsy.  Because a triable issue of material fact exists, the Court recommends Defendant's motion for summary judgment be **DENIED**.

**I.      Procedural History**

Defendant filed a motion for summary judgment asserting that there is no genuine dispute of material fact (asserting his actions were medically necessary and were not sexual) and that he is entitled to qualified immunity.  (Doc. 74.)  Plaintiff opposes the motion and asserts that Defendant's actions on July 22, 2009, amounted to sexual assault.  (Docs. 78, 79.)  Defendant filed a reply.  (Doc. 80.)  Plaintiff filed a sur-reply[1] to Defendant's reply.  (Doc. 81.)  The Court

---

[1] Plaintiff is not permitted to file a surreply under the Local Rules or the Federal Rules of Civil Procedure, and

1   deems the motion submitted.  L.R. 230(l).

2   **II.       Summary Judgment Standard**

3         Summary judgment is appropriate where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Washington Mutual Inc. v. U.S.*, 636 F.3d 1207, 1216 (9th Cir. 2011).  An issue of fact is genuine only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party, while a fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Wool v. Tandem Computers, Inc.,* 818 F.2d 1422, 1436 (9th Cir. 1987).  The Court determines only whether there is a genuine issue for trial and in doing so, it must liberally construe Plaintiff's filings because he is a *pro se* prisoner. *Thomas v. Ponder*, 611 F3d 1144, 1150 (9th Cir. 2010) (quotation marks and citations omitted).

      In addition, Rule 56 allows a court to grant summary adjudication, or partial summary judgment, when there is no genuine issue of material fact as to a particular claim or portion of that claim.  Fed. R. Civ. P. 56(a); *see also Lies v. Farrell Lines, Inc.*, 641 F.2d 765, 769 n.3 (9th Cir. 1981) ("Rule 56 authorizes a summary adjudication that will often fall short of a final determination, even of a single claim . . .") (internal quotation marks and citation omitted).  The standards that apply on a motion for summary judgment and a motion for summary adjudication are the same.  *See* Fed. R. Civ. P. 56 (a), (c); *Mora v. Chem-Tronics*, 16 F.Supp.2d 1192, 1200 (S.D. Cal. 1998).

      Each party's position must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact.  Fed. R. Civ. P. 56(c)(1) (quotation marks omitted).  The Court may consider other materials in the record not cited to by the parties, but it is not required to do so.  Fed. R. Civ. P. 56(c)(3); *Carmen v. San Francisco Unified School Dist*., 237 F.3d 1026, 1031 (9th Cir. 2001); *accord Simmons v. Navajo*

---

Plaintiff did not obtain leave of the Court to do so.  Thus, Plaintiff's surreply is **DISREGARDED**.

*County, Ariz.,* 609 F.3d 1011, 1017 (9th Cir. 2010).

Defendants do not bear the burden of proof at trial and, in moving for summary judgment, they need only prove an absence of evidence to support Plaintiff's case. *In re Oracle Corp. Securities Litigation*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). If Defendants meet their initial burden, the burden then shifts to Plaintiff "to designate specific facts demonstrating the existence of genuine issues for trial." *In re Oracle Corp.,* 627 F.3d at 387 (citing *Celotex Corp.,* 477 U.S. at 323). This requires Plaintiff to "show more than the mere existence of a scintilla of evidence." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). An issue of fact is genuine only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party, while a fact is material if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248; *Wool v. Tandem Computers, Inc.*, 818 F.2d 1422, 1436 (9th Cir. 1987).

In judging the evidence at the summary judgment stage, the Court may not make credibility determinations or weigh conflicting evidence. *Soremekun v. Thrifty Payless Inc.,* 509 F.3d 978, 984 (9th Cir. 2007) (quotation marks and citation omitted). It must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment. *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 942 (9th Cir. 2011) (quotation marks and citation omitted), *cert. denied*, 132 S.Ct. 1566 (2012). The Court may not draw inferences out of thin air; the nonmoving party must produce a factual predicate from which the inference may reasonably be drawn. *See Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th Cir. 1987).

**III.   Eighth Amendment**

**A.  Eighth Amendment**

The Eighth Amendment prohibits cruel and unusual punishment in penal institutions. Whether a specific act constitutes cruel and unusual punishment is measured by "the evolving standards of decency that mark the progress of a maturing society." *Hudson v. McMillian,* 503 U.S. 1, 8 (1992).

1    Sexual harassment or abuse of an inmate by a corrections employee is a violation of the
2    Eighth Amendment. *Wood v. Beauclair*, 692 F.3d 1041, 1045-46 (9th Cir. 2012) citing *Schwenk*
3    *v. Hartford,* 204 F.3d 1187, 1197 (9th Cir.2000) ("In the simplest and most absolute of terms ...
4    prisoners [have a clearly established Eighth Amendment right] to be free from sexual abuse....");
5    *see also Women Prisoners of the Dist. of Columbia Dep't of Corr. v. District of Columbia,* 877
6    F.Supp. 634, 665 (D.D.C.1994) ( "[U]nsolicited touching of ... prisoners' [genitalia] by prison
7    employees are 'simply not part of the penalty that criminal offenders pay for their offenses
8    against society' " (quoting *Farmer v. Brennan,* 511 U.S. 825, 834 (1994))), *aff'd in part and*
9    *vacated in part,* 93 F.3d 910 (D.C.Cir.1996).

10   ""[S]exual contact between a prisoner and a prison [employee] serves no legitimate role
11   and is simply not part of the penalty that criminal offenders pay for their offenses against society.
12   Where there is no legitimate penological purpose for a prison official's conduct, courts have
13   'presum[ed] malicious and sadistic intent.'" *Wood,* 692F.3d at 1050-51, quoting *Giron v. Corr.*
14   *Corp. of Am.*, 191 F.3d 1281, 1290 (10th Cir.1999); also citing *Boddie v. Schnieder*, 105 F.3d
15   857, 861 (2d Cir.1997). Even sexual contact that is not violent and leaves no physical injury is
16   presumed unlawful and committed with malicious and sadistic intent. *Id*.

17   "At its core, the Eighth Amendment protects 'the basic concept of human dignity' and
18   forbids conduct that is 'so totally without penological justification that it results in the gratuitous
19   infliction of suffering.'" *Wood,* 692F.3d at 1050-51, quoting *Gregg v. Georgia*, 428 U.S. 153,
20   182–83, 96 S.Ct. 2909 (1976). Sexual assault on a prisoner by a prison employee is always
21   "deeply 'offensive to human dignity' " and is completely devoid of penological justification.
22   *Schwenk*, 204 F.3d at 1196. Allegations that meet this basic threshold survive summary
23   judgment. *Wood*, 693 F.3d at 1049, 1051.

24   **B. Analysis**

25   Defendant argues that he did not sexually assault Plaintiff on July 22, 2009. (Doc. 74,
26   7:5-8:15.) He claims that he examined her, performed a pap smear, and attempted an endometrial
27   biopsy that he terminated when Plaintiff suddenly moved up the exam table with medical
28   instruments attached to her cervix, which created a risk of harm. (*Id.*) He claims he convinced

1    Plaintiff to return to proper positioning and he then removed the instruments without completing
2    the biopsy.  (*Id.*) Defendant asserts that he quickly removed the instruments and that there was
3    nothing sexual about the encounter.  (*Id.*)  He asserts he is entitled to summary judgment because
4    Plaintiff has not produced any evidence to show that his actions were not medically necessary.
5    (*Id.*)
6         In arguing that there was a penological purpose for the biopsy, Defendant's evidence
7    demonstrates that the uterine biopsy was medically indicated because of Plaintiff's continued
8    complaints of vaginal bleeding despite normal blood work and lab results.  (*Id.*, at 8:16-27.)
9    Defendant states that the biopsy was routine, he had performed it on Plaintiff in the past, and that
10   it was necessary for him to quickly remove the instruments that were still attached to Plaintiff
11   after she scooted up the exam table to avoid her being injured.  (*Id.*)  Defendant asserts that this
12   shows that all of his actions were medically necessary.  (*Id.*)
13        In her declaration in opposition, Plaintiff states she was seeing Defendant on July 22,
14   2009 for a pap smear/follow-up gynecological exam.  (Doc. 78, p. 2.)  Plaintiff states that no
15   biopsy was scheduled for that day and that no biopsy was performed.  (Doc. 79, p. 2.)  Plaintiff
16   submits that neither Defendant's notes nor those of LVN Moore, who was also present, indicate
17   that a biopsy was to be performed or was initiated.  (*Id.*; at p. 2, Exhs. E & F; Doc. 78, p. 3, Exhs.
18   C & D.)    She explains further that Defendant required her to undress from the waist down and
19   get on the exam table, that he draped her and inserted two "huge" fingers (Doc. 78, p.1) inside her
20   vagina which caused her extreme pain; that when she asked him to stop jiggling his fingers inside
21   her vagina, Defendant stood up with his fingers still inside her vagina and shoved aggressively
22   deeper inside her vagina while pushing on her stomach and moving his fingers in and out of her
23   vagina "in a rough and sick manner causing [Plaintiff] to cry out in pain and feeling [sic] raped
24   and subsequently bleeding for days afterwards" (*id*, p. 2).  Thus, these accounts are directly at
25   odds.
26        Defendant's evidence that the procedure he was attempting to perform on Plaintiff (and
27   the removal of instruments) was medically necessary does not negate Plaintiff's testimony that his
28   actions involving her genitals were sexually aggressive while she lay vulnerable on the exam

table. Indeed, Defendant presents no evidence that Plaintiff consented to this biopsy and she adamantly denies that she did. Defendant presents no evidence that, medically justified or not, he was entitled to perform the biopsy in any manner—let alone one that injured Plaintiff—without her permission.

Even still, Defendant argues that his actions towards Plaintiff on July 22, 2009 were not sexual. (*Id.*, at 9:1-27.) Defendant also asserts that he did not "jiggle" his fingers inside of Plaintiff, but rather removed instruments from inside her to prevent injury.[2] (*Id.*) Defendant argues that the evidence shows that his actions were necessary to prevent injury to Plaintiff and that there is no evidence to support Plaintiff's claim that his actions were sexually motivated. (*Id.*) Defendant argues that Plaintiff's allegations, that Defendant "shoved his fingers deeper inside of her vagina" and was "sexually abusive" during the examination, are contradicted by her deposition testimony that Defendant did not make any sexual statements to her. (*Id.*) Defendant submits that this argument is supported by Plaintiff's deposition testimony that Defendant's actions were sexual because he did not stop when she asked him to and because his "gestures in the exam were sexual." (*Id.*) However, even assuming Defendant was silent and did not make any sexual comments during the encounter, this is insufficient to demonstrate that Defendant acted with Plaintiff's consent and that they were properly motivated.

Notably, Defendant's examination notes from the July 22, 2009 incident are illegible and the court cannot make out whether the notes indicate whether biopsy was planned or whether it was, in fact, attempted. LVN Moore's note appears to corroborate Plaintiff's version of events, at least to some extent. (Doc. 79, pp. 9-10.) LVN Moore's notes document Plaintiff's said to Defendant to "quit jiggling your hand inside me," that Plaintiff became tearful, that LVN Moore instructed Plaintiff to speak to a nursing supervisor if she was uncomfortable with the situation, and noted that LVN Moore emailed "the DON/SRNII Cheema" about the exam. (*Id.*)

In his reply, Defendant takes umbrage at the use of the note attributed to LVN Moore and claims that "resembles Plaintiff's own writing" imploring the Court to compare an "S" on page 5

---

[2] He does not dispute that Plaintiff claimed that he was doing so at the time of the incident.

of the Third Amended Complaint and an "S" on page 13 of Plaintiff's opposition. (Doc. 80, 3:1-3, n. 2.) However, merely looking at the nursing note which Plaintiff submitted (Doc. 79, pp.9-10) and the examples of Plaintiff's writing to which Defendant refers, does not definitively reveal that Plaintiff fabricated the note from LVN Moore and the Court has insufficient evidence before it to make any such finding.[3] In any event, Plaintiff's declaration contradicts the evidence presented in the motion and even without corroborating evidence, it is sufficient to create a dispute of material fact.

## V.    **Qualified Immunity**

Government officials enjoy qualified immunity from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738 (1982). "Qualified immunity balances two important interests - the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S.Ct. 808, 815 (2009). It protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 1096 (1986).

In resolving a claim of qualified immunity, courts must determine whether, taken in the light most favorable to the plaintiff, the defendant's conduct violated a constitutional right, and if so, whether the right was clearly established. *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 2156 (2001); *Mueller v. Auker*, 576 F.3d 979, 993 (9th Cir. 2009). While often beneficial to address in that order, courts have discretion to address the two-step inquiry in the order they deem most suitable under the circumstances. *Pearson*, 555 U.S. at 236, 129 S.Ct. at 818 (overruling holding in *Saucier* that the two-step inquiry must be conducted in that order, and the second step is reached only if the court first finds a constitutional violation); *Mueller*, 576 F.3d at 993-94.

The inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition. . . ." *Saucier*, 533 U.S. at 201. "[T]he right the official is alleged to have

---

[3] Indeed, the Court lacks the specialized training needed to conduct a handwriting analysis.

violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.,* at 202 (citation omitted).

The second prong of this analysis easily weighs in Plaintiff's favor since the right of inmates to be free from sexual harassment or abuse was clearly established nearly a decade before the events in this action occurred. *See Schwenk,* 204 F.3d 1187, 1197 (9th Cir.2000) ("In the simplest and most absolute of terms ... prisoners [have a clearly established Eighth Amendment right] to be free from sexual abuse...."). Further, if the Court credits Plaintiff's account of the incident—as it must at this stage—Defendant's conduc violates a clearly established right. Thus, Defendant is not entitled to qualified immunity and the Court recommends his motion in this regard to be **DENIED**.

**VI.     Conclusions and Recommendations**

For the reasons set forth above, the Court **RECOMMENDS** that Defendant's motion for summary judgment, filed on May 12, 2015 (Doc. 74), be **DENIED.**

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). **Within 30 days** after being served with these Findings and Recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:     **December 30, 2015**              /s/ Jennifer L. Thurston
                                              UNITED STATES MAGISTRATE JUDGE