Jenny C. Huang, SBN 223596
JUSTICE FIRST
180 Grand Avenue, Suite 1300
Oakland, CA  94612
Telephone: (510) 628-0695
Fax: (510) 318-7701
E-mail: jhuang@justicefirst.net

Attorney for Plaintiff Michann Meadows

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

MICHANN MEADOWS

          Plaintiff,

vs.

ERNEST REEVES, M.D.,

          Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No.:  1:11-CV-0257 (JLT)

**PLAINTIFF'S MOTION FOR ATTENDANCE OF INCARCERATED WITNESSES**

Pretrial Conf. Date: March 31, 2017, 1:30 p.m.
Location:  510 19th Street, Bakersfield, CA
Trial Date:  April 25, 2017
Judge:  Honorable Jennifer Thurston

**<u>INTRODUCTION</u>**

Plaintiff Michann Meadows brings this motion for the attendance of seven incarcerated witnesses who have agreed to voluntarily testify at trial.  This motion is brought pursuant to this Court's orders filed on January 17, 2017 (Doc. 123) and on September 12, 2016 (Doc. 104).  By way of this motion, Ms. Meadows submits sworn declarations from seven inmates who were former patients of Dr. Reeves when he worked as a gynecologist at the Central California Women's Facility ("CCWF").  All seven of the patients were subjected to gynecological exams by Dr. Reeves that they found to be inappropriate, rough and overly aggressive, very painful, and/or demeaning. (Declarants 1-7).  All but one of the patients was sexually abused prior to their incarceration and as a result, were similarly traumatized by the abusive examinations performed by Dr. Reeves. (Declarants  1-2, 4-7).  All of the patients state that Dr. Reeves

JUSTICE FIRST

inappropriately put his finger(s) in their anus during his examination. (Declarants 1-7). Three patients attest that Dr. Reeves refused to immediately stop what he was doing when they complained during the examination that he was hurting them. (Declarants 1, 2, 6). Four of the patients state that Dr. Reeves responded in a hostile or aggressive manner when they complained about his conduct during the examination. (Declarants 1, 2, 5, 6). Three of the patients attest to derogatory, offensive, or demeaning language that Dr. Reeves used during his examinations. (Declarant 1, 5, 7).

Four of the patients requested to see a female gynecologist instead of Dr. Reeves, without success. (Declarants 1-2, 6, 7). Two of the patients refused further gynecological care by Dr. Reeves. (Declarants 1,6. One of the patients declined gynecological care entirely because she refused care by Dr. Reeves and had no other options available. (Declarant 6).

All but one of the declarants are presently incarcerated at the Central California Women's Facility ("CCWF") in Chowchilla, California, where Ms. Meadows is incarcerated. (Declarants 1-3, 5-7). Declarant 4 is currently in custody at the California Institution for Women ("CIW") in Corona, California.

The testimony of the seven declarants will substantially assist in the resolution of this case and is admissible pursuant to Fed.R.Evid. 415. Further, the probative value of this evidence far outweighs any prejudicial effect on Dr. Reeves. Finally, the transportation costs and any security risks presented by having these witnesses testify at trial are minimal in comparison to the value of such proffered testimony. Alternatively, Ms. Meadows requests that some or all of the witnesses be permitted to testify at trial via videoconference.

## ARGUMENT

When considering a motion for the attendance of incarcerated witnesses, federal courts will evaluate the following factors: (1) whether the inmate's presence will substantially further the resolution of the case, (2) the security risks presented by the inmate's presence, (3) the expense of transportation and security, and (4) whether the suit can be stayed until the inmate is released without prejudice to the cause asserted. *Wiggins v. County of Alameda,* 717 F.2d 466, 468, fn 1 (9th Cir. 1983).

JUSTICE FIRST

## I. THE TESTIMONY OF THE SEVEN PATIENT DECLARANTS IS ADMISSIBLE AND WILL SUBSTANTIALLY FURTHER RESOLUTION OF THE CASE.

A. <u>Evidence of Other Inmate Patients Who Were Sexually Assaulted By Dr. Reeves During His Gynecological Exams is Admissible Pursuant to Fed.R.Evid. 415.</u>

Pursuant to the Federal Rules of Evidence, evidence that a party committed other acts of sexual assault is admissible against a party who is accused of sexual assault in a civil case. Fed.R.Evid. 415.  Evidence admissible under Rule 415 may include uncharged acts of sexual assault.  *Johnson v. Elk Lake Sch. Dist.*, 283 F.3d 138, 151-52 (3d Cir. 2002); *United States v. Meacham*, 115 F.3d 1488, 1492 (10th Cir. 1997).  This evidentiary rule was intended as an exception to Fed.R.Evid. 404(b), which imposes a blanket prohibition on propensity evidence. *Blind-Doan v. Sanders,* 291 F.3d 1079, 1082-83 (9th Cir. 2002) (citing  *Doe v. Glanzer,* 232 F.3d 1258, 1268 (9th Cir. 2000)).

The term "sexual assault" is defined, among other things, to include any "contact, without consent, between any part of the defendant's body – or an object – and another person's genitals or anus".  Fed.R.Evid. 413(d) (definition of sexual assault for purposes of Fed.R.Evid. 413 and 415).  Dr. Reeves is expected to argue that Ms. Meadows, as well as the patient declarants, consented to having him examine her.  However, Ms. Meadows and the patient declarants allege that Dr. Reeves did things during his exams that go well beyond the scope of any consensual gynecological examination.  Moreover, in the prison context and with regard to sexual misconduct between California Department of Corrections & Rehabilitation ("CDCR") staff and inmates, "the legal concept of 'consent' does not exist between department staff and inmates/parolees".   15 C.C.R. § 3401.5.

The policy reasons underlying Fed.R.Evid. 415 are furthered by the admission of testimony from other patients were similarly abused by Dr. Reeves during gynecological examinations.  The legislative history of Fed.R.Evid. 415 demonstrates that Congress sought to address the difficult credibility determinations that typically result in sex offense cases as follows:  "Knowledge that the defendant has committed rapes on other occasions is frequently critical in assessing the relative plausibility of these claims and accurately deciding cases that would otherwise become unresolvable swearing matches."  *U.S. v. Enjady*, 134 F.3d 1427, 1431

JUSTICE FIRST

(10th Cir. 1998) (quoting 140 Cong. Rec. S. 129901-01, S12990 (R. Dole, Sept. 20, 1994)); *see also, U.S. v. Mound,* 149 F.3d 799, 801 (8th Cir. 1998).  Here, the admission of testimony from other patients who endured similarly abusive examination by Dr. Reeves is necessary to help resolve the difficult credibility determination between Ms. Meadows and Dr. Reeves.  To prevent an "unresolvable swearing match" between Ms. Meadows and Dr. Reeves, evidence regarding Dr. Reeves sexual abuse of other inmate patients is admissible to prove that he sexually abused Ms. Meadows.  *McMahon v. Valenzuela*, No. 2:14-cv-02085, 2015 U.S.Dist.LEXIS 159611, at *9 (C.D.Cal. Nov. 25, 2015) (testimony about other complaints of sexual assault by police officers was admissible pursuant to Fed.R.Evid. 415 to show the officers sexually assaulted plaintiff)*; United States v. Sioux,* 362 F.3d 1241, 1247 (9th Cir. 2004) (subsequent act of sexual assault against another female was admissible under Fed.R.Evid. 413 to prove defendant sexually assaulted first victim).

To determine whether evidence is admissible pursuant to Fed.R.Evid. 413, the Ninth Circuit has adopted a three-step inquiry:  (1) the defendant must be accused of an offense of sexual assault, (2) the proffered evidence must relate to the commission of another offense of sexual assault, and (3) the evidence must be relevant.  *Doe v. Glanzer, supra,* 232 F.3d at 1268.  In regards to the last prong, the Ninth Circuit has recognized that "a defendant with a propensity to commit acts similar to those charged is more likely to have committed the charged act than another and therefore such evidence is relevant and in conformity with the standards set out in Fed. R. Evid. 401 & 402".  *Id.*

In this case, it is indisputable that Dr. Reeves is accused of an offense of sexual assault and that the patient declarants all relate to his commission of other offenses of sexual assault.  Moreover, the proffered evidence is relevant for the following reasons:  (1) to show Dr. Reeves' propensity to sexually abuse inmates during his gynecological examinations, (2) a common pattern or modus operandi in the way that Dr. Reeves sexually abused inmates, (3) Dr. Reeves' motive or intent, (4) to bolster Ms. Meadows' credibility and her emotional response to Dr. Reeves' abuse, (5) to counter Dr. Reeves' defense that he conducted himself in a professional manner during his gynecological exams, (6) to prove malicious intent or callous disregard in

JUSTICE FIRST

JUSTICE FIRST

support of punitive damages, and (7) to support the claim for injunctive relief if reinstated.  For all or any of these reasons, this Court should conclude that the testimony of the patient declarants is admissible pursuant to Fed.R.Evid. 415.

B.  The Probative Value of Evidence From Other Patients Who Were Sexually Abused by Dr. Reeves Far Outweighs Any Prejudicial Impact to Dr. Reeves.

If this Court is inclined to admit the testimony of the patient declarants pursuant to Fed.R.Evid. 415, it must then evaluate whether the probative value of such evidence is outweighed by the danger of unfair prejudice to Dr. Reeves pursuant to Fed.R.Evid. 403 and 404. *Doe v. Glanzer, supra,* 232 F.3d at 1268.  In fact, the Ninth Circuit has held that district courts must make a clear record of its decision whether or not to admit the evidence. *Blind-Doan v. Sanders,* 291 F.3d 1079, 1082-83 (9th Cir. 2002) (district court committed reversible error by excluding evidence of similar acts of sexual assault by defendant police officer in civil action by jail detainee without articulating the probative value and prejudicial impact of such evidence).  In particular, district courts should clearly state its consideration of the following factors:  the similarity of the prior acts to the acts charged; the closeness in time of the prior acts to the acts charged; the frequency of the prior acts; the presence or lack of intervening circumstances; and the necessity of the evidence "beyond the testimonies already offered at trial." *Blind-Doan v. Sanders, supra,* 291 F.3d at 1082 (quoting *Doe v. Glanzer, supra,* 232 F.3d at 1268-69).

Application of the *Glanzer* factors weigh in favor of admitting the testimony of the patient declarants.  Each of the declarants describe in detail the abusive nature of Dr. Reeves' examinations that are strikingly similar to the abuse endured by Ms. Meadows, including the rough, overly aggressive, and abnormal use of his fingers, unnecessary "rectal exams", his use of derogatory or demeaning language, the hostile manner in which Dr. Reeves responded when patients complained about his conduct, and his refusal to immediately stop the exam when patients complained of pain.  All of the declarants complain about examinations by Dr. Reeves that occurred at or around the primary incidents alleged by Ms. Meadows, with none of the incidents occurring more than three years apart from the 2001 and 2009 incidents alleged by Ms. Meadows.  Altogether, the frequency of the sexual abuse alleged against Dr. Reeves by Ms.

Meadows and the patient declarants is alarming.  There are no intervening circumstances that minimize the value of the proffered evidence.  As discussed above, the testimony of the patient declarants is necessary to help resolve the otherwise difficult credibility battle between Ms. Meadows and Dr. Reeves.

The proffered evidence is admissible for several admissible purposes under Fed.R.Evid. 404(b).  The evidence is admissible to prove the absence of mistake or lack of accident, in order to counter Dr. Reeves' defense that he performed professional gynecological exams on all of his inmate patients. *United States v. King,* 200 F.3d 1207, 1214-15 (9th Cir. 1999) (upholding admission of evidence that defendant previously issued worthless checks to prove absence of mistake in bank fraud prosecution).  Such evidence is also admissible to prove Dr. Reeves' motive, intent, and modus operandi in his sexual abuse of patients. *Lewis v. City of Albany Police Dept.,* 547 F.Supp.2d 191, 200-01 (N.D.N.Y. 2008) aff'd, 332 Fed.Appx. 641 (2nd Cir. 2009) (prior complaints of police officer's use of excessive force against arrestees was properly admitted under Fed.R.Evid. 404(b) to show motive, intent, and modus operandi in excessive force action against officer).

Finally, the testimony of the patient declarants is relevant on the issue of punitive damages against Dr. Reeves.  Evidence that Dr. Reeves repeatedly subjected inmate patients to sexually abusive examinations over the course of a 12 year period is relevant to prove his malicious intent or callous disregard in support of Plaintiff's claim for punitive damages. *O'Connor v. Boeing N.Am., Inc.,* 2005 U.S.Dist.LEXIS 46236 at *99 (C.D.Cal. Aug. 9, 2005) quoting *State Farm Mut. Auto. Ins. Co. v. Campbell,* 538 U.S. 408, 423 (2003) (if the "conduct in question replicates prior transgressions", it is properly admitted on the issue of punitive damages); *Hampton v. City of San Diego,* 147 F.R.D. 227, 229 (S.D.Cal. 1993) (other instances of police misconduct is relevant on the issue of punitive damages to show a continuing course of conduct reflecting malicious conduct).

//

//

//

JUSTICE FIRST

JUSTICE FIRST

## II.    OTHER FACTORS WEIGH IN FAVOR OF GRANTING PLAINTIFF'S MOTION FOR ATTENDANCE OF INCARCERATED WITNESSES.

Evaluation of the other factors that are considered on a motion for attendance of incarcerated witnesses also weighs in favor of granting Plaintiff's motion.  Given that most of the patient declarants are incarcerated at CCWF, all of those witnesses can be transported together by the CDCR to minimize the cost of transportation.  Moreover, the testimony of these witnesses is expected to last no longer than 30 minutes each at most, thereby allowing CDCR to transport those witnesses to and from the trial in one day. At least one, and possibly two additional, witnesses are currently incarcerated at the CIW, which is approximately the same distance from Bakersfield as CCWF.  The witnesses from CIW can similarly be transported to and from the trial in one day.  Finally, given that Ms. Meadows first filed her complaint more than six years ago, it would be unduly prejudicial to stay this matter until some or any of the witnesses are released from custody.

## III.    ALTERNATIVELY, MS. MEADOWS REQUESTS LEAVE TO ALLOW THE PATIENT DECLARANTS TO TESTIFY AT TRIAL VIA VIDEOCONFERENCE.

Alternatively, Ms. Meadows requests that the witnesses be permitted to testify at trial via videoconference.  Pursuant to Fed.R.Civ.Pro. 43(a), federal courts may permit testimony in open court from a different location upon a showing "[f]or good cause in compelling circumstances and with appropriate safeguards".  Fed.R.Civ.Pro. 43(a).  In the event that this Court finds that the benefits of having the seven inmate witnesses produced for trial in Bakersfield are outweighed by the expense or security risk involved, Ms. Meadows respectfully requests that the seven witnesses be permitted to testify at trial by videoconference.  *See*, *Zavala v. Chrones* (E.D.Cal. Dec. 14, 2012, No. 1:09-cv-01352-BAM PC) 2012 U.S.Dist.LEXIS 178261, at *7 (good cause exists to allow inmate witness testify at trial by video conference pursuant to Fed.R.Civ.Pro., rule 43(a)).

//

//

//

## **CONCLUSION**

For the reasons stated above, Ms. Meadows respectfully requests that this Court grant her motion for the attendance of incarcerated witnesses, all of whom agree to testify voluntarily. The benefits of having these witnesses testify at trial far outweigh any expense or security risk posed by having these inmates transported to the trial in Bakersfield, California.  Alternatively, Ms. Meadows requests that this Court permit some or all of her witnesses to testify at trial by way of videoconference.

Dated:   February 24, 2017                            By:
            Oakland, California

                                               _____*/s/ Jenny Huang*_____
                                               Jenny C. Huang
                                               180 Grand Avenue, Suite 1300
                                               Oakland, CA  94612
                                               Tel.: (510) 628-0695

JUSTICE FIRST