# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| MICHANN MEADOWS,<br><br>        Plaintiff,<br><br>   v.<br><br>DR. REEVES, et al.,<br><br>        Defendants. | Case No. 1:11-cv-00257-LJO-JLT (PC)<br><br>**ORDER ON PLAINTIFF'S MOTION TO AMEND**<br><br>**(Doc. 127)** |
|---|---|

This action is proceeding on Plaintiff's claim against Defendant, Dr. Reeves, for violating her rights based on events in gynecological examinations while she was under his care from 1998 - 2009 as stated in the Second Amended Complaint. (*See* Docs. 28, SAC; Doc. 42, O Screen.) Plaintiff filed a motion to amend her pleading to reinstate a due process claim under the Fourteenth Amendment against Defendant and injunctive relief claims from the CDCR via Secretary Scott Kernan. (Doc. 127.)[1] Plaintiff has not shown good cause to modify the scheduling order and allow late amendment of her operative pleading. Thus, the motion is **DENIED**.

**I.     Modification of Scheduling Orders -- Rule 16(b):**

Pursuant to Federal Rule of Civil Procedure 16(b)(3)(A), district courts must enter

---

[1] All references to pagination of specific documents pertain to those as indicated on the upper right corners via the CM/ECF electronic court docketing system.

1

scheduling orders to establish deadlines for joinder of parties, amending the pleadings, discovery, and filing of motions.  Scheduling orders may also "set dates for pretrial conferences and for trial." F.R.Civ.P. 16(b)(3)(B)(v).  The scheduling order "controls the course of the action unless the court modifies it." F.R.Civ.P. 16(d).  Scheduling orders "are the heart of case management," *Koplve v. Ford Motor Co.*, 795 F.2d 15, 18 (3rd Cir. 1986), and are intended to alleviate case management problems.  *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 610 (9th Cir. 1992).  A "scheduling conference order is not a frivolous piece of paper, idly entered,[2] which can be cavalierly disregarded without peril." *Id.*  Parties must "diligently attempt to adhere to that schedule throughout the subsequent course of the litigation." *Jackson v. Laureate, Inc.*, 186 F.R.D. 605, 607 (E.D. Cal. 1999); *see Marcum v. Zimmer*, 163 F.R.D. 250, 254 (S.D. W.Va. 1995).

A party seeking leave of court to amend a pleading, with implications for the schedule of a case, must first satisfy Rule 16(b)'s "good cause" standard.  *Johnson*, 975 F.2d at 608-09; F.R.Civ.P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent.").  This good cause evaluation "is not coextensive with an inquiry into the propriety of the amendment under . . . Rule 15." *Id*. at 609.  Distinct from Rule 15(a)'s liberal amendment policy, Rule 16(b)'s good cause standard focuses primarily on the diligence of the moving party, *id*., and that party's reasons for seeking modification, *C.F. ex rel. Farnan v. Capistrano Unified Sch. Dist.*, 654 F.3d 975, 984 (9th Cir. 2011).

In *Johnson*, 975 F.2d at 609, the Ninth Circuit Court of Appeals explained:

> . . . Rule 16(b)'s "good cause" standard primarily concerns the diligence of the party seeking the amendment.  The district court may modify the pretrial schedule "if it cannot reasonably be met despite the diligence of the party seeking the extension." Fed.R.Civ.P. 16 advisory committee's notes (1983 amendment) . . . Moreover, carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief. . . .  [T]he focus of the inquiry is upon the moving party's reasons for seeking modification. . . .  If that party was not diligent, the inquiry should end.

Moreover, this Court's Local Rule 144(d) requires a party to seek extension of the deadline as

---

[2] The Court recognizes that, because at the time it issued Plaintiff was both incarcerated and proceeding *pro se*, the Discovery and Scheduling order issued without her input.

soon as the need becomes apparent. *See also Hood v. Hartford Life & Acc. Ins. Co.*, 567 F.Supp.2d 1221, 1224 (ED CA. 2008).

### A. Analysis

The Court issued the Discovery and Scheduling order and set December 21, 2014 as the deadline to amend pleadings. (Doc. 53.) Thus, Plaintiff's motion to amend her pleading cannot be considered absent good cause under Rule 16 to modify the Discovery and Scheduling Order.

#### 1. Plaintiff's Motion

The Discovery and Scheduling Order which opened discovery in this case issued on June 24, 2014. (Doc. 53.) Plaintiff presents evidence that while *pro se*, she engaged in her best efforts to conduct discovery, but was hampered by her lack of knowledge on the discovery process and difficulty accessing the law library at the prison. (Doc. 129, Meadows Decl., ¶¶ 8-9.) Notably, the Court appointed counsel was for Plaintiff in April 2016 (Doc. 88) to assist in a June 30, 2016 settlement conference, but the attorney remained with the case thereafter.[3]

At the Court's direction, the parties filed a joint status report on July 28, 2016, in which Plaintiff requested an additional six months to conduct limited discovery. (Docs. 97, 98.) On August 9, 2016, the Court granted Plaintiff's request for limited discovery. (Doc. 101.) After efforts to engage in informal discovery failed, Plaintiff served written discovery requests on Defendant in September 2016. (Doc. 130, Huang Decl., ¶ 9.) In October 2016, after Defendant asserted custody and control objections to Plaintiff's discovery, Plaintiff served subpoenas on CDCR and CCWF. (*Id.* at ¶ 14.) Defendant's counsel subsequently served as counsel for CDCR and CCWF in responding to Plaintiff's subpoenas. (*Id.*) Plaintiff's counsel began taking the deposition of nurse witnesses in October 2016, shortly after necessary documents were obtained. (*Id.* at ¶ 15.) Although Plaintiff's counsel served a notice to depose Defendant on October 13, 2016, his deposition was postponed until November 8, 2016 due to his medical issues. (*Id.* at ¶¶ 15-16.) On November 8, 2016, Defendant's deposition began, but ended early at Defendant's request. (*Id.* at ¶ 17.) Defendant's deposition continued on December 22, 2016, but may be

---

[3] This same counsel was also previously appointed to assist Plaintiff, but only for the limited purpose of amending her pleading. (*See* Doc. 19.)

continued pending resolution of ongoing discovery disputes.  (*Id*.)  The deposition of LVN Anna Miller (aka Anna Moore),[4] who was present during the incident at issue on July 22, 2009, was taken by tele-conference video deposition on January 6, 2017.  (*Id.* at ¶ 20.)  Plaintiff claims it was not until the depositions of Defendant and LVN Miller that Plaintiff obtained evidence confirming that *if* Defendant attempted to perform the endometrial biopsy, California regulations required him to obtain Plaintiff's written consent.

Defendant testified, consistent with the statements asserted in his May 2015 summary judgment declaration, that he initiated and attempted but did not complete an endometrial biopsy on Plaintiff on July 22, 2009.  (Doc. 130-1, Huang Decl., Exh. C, pp. 14-17.)  Defendant acknowledged that his normal procedure was to obtain the written consent of an inmate prior to performing an endometrial biopsy.  (*Id.* at p. 3.)  Plaintiff's medical records contain a written consent form she signed for an endometrial biopsy by Defendant two years before.  (Doc. 129-1, Meadows Decl., Exh. B, p. 2; Huang Decl. at ¶ 39.)  However, Plaintiff's medical records contain no executed consent for the endometrial biopsy related to the events on July 22, 2009.  (Doc. 130, Huang Decl. at ¶ 39.)

In her deposition, taken on January 6, 2017, LVN Miller authenticated[5] the medical record on which she documented Defendant's exam of Plaintiff on July 22, 2009.  (Doc. 130, Huang Decl., Exh. D, pp. 17-19, Exh. E.)  LVN Miller did not recall Defendant performing an endometrial biopsy on Plaintiff on that date and testified that she would have noted it in her medical record if it had occurred.  (Doc. 130, Huang Decl., Exh. D, pp. 16-17.)  LVN Miller's notes do not indicate that Plaintiff underwent a biopsy procedure.  (*Id.*)

  **2.**  **Defendant's Opposition**

Defendant's opposition only addresses the aspect of Plaintiff's motion which seeks to amend her operative pleading under Rule 15 -- it does not expressly address the standards

---

[4] After July 2009 LVN Anna Moore's name changed to "Miller" due to her marriage.  (*See* Doc. 130-2, Exh. D, to Huang Decl., Miller Depo at pp. 3-4

[5] Notably, Ms. Miller testified that no one attempted to contact her regarding the authenticity of her medical record prior to the claim in June 2015 that Plaintiff falsified the medical record by writing it herself. (Doc. 80 at pp. 2:27-28, 3:1-3, fn 2; Huang Decl., Exh. D at pp. 16:17-20.)

applicable for modification of the Discovery and Scheduling Order under Rule 16. (*See* Doc. 137.) However, Defendant asserts that Plaintiff unduly delayed in seeking to amend her pleading under Rule 15, which applies also to the diligence requirement of Rule 16.

To this end, Defendant contends that Plaintiff unduly delayed seeking amendment of her complaint to allege a due process claim under the Fourteenth Amendment for performing a surgical procedure without her consent. Defendant argues that he raised the biopsy procedure as a defense in May 2015 when he filed for summary judgment (Doc. 74), and at that time, Plaintiff knew whether Defendant attempted that procedure without her written consent. (Doc. 137, 9:1-9.) Defendant argues that, Plaintiff unduly delayed seeking leave to amend to include a due process claim against him. (*Id.*)

### 3. **Lack of diligence**

Plaintiff relies significantly on the fact that she was unrepresented at the time of her initial discovery efforts and at the time of the motion for summary judgment. However, she offers no satisfactory explanation why, in 11 months since the Court appointed counsel for her once again (Doc.88), she failed to seek amendment to the complaint. The Court finds this fails to demonstrate diligence for several reasons.

First, at the time she filed her second amended complaint, Plaintiff *was* represented by counsel and she *did* raise a due process claim. (Doc. 28.) However, it was dismissed (Docs. 38, 42), at her agreement (Doc. 41), because the complaint failed to state any facts to support such a claim (Doc. 38). Despite that counsel drafted this complaint, she offers no explanation for the absence of any factual allegations to support the due process claim.

Second, counsel admits she was aware at the time she drafted the second amended complaint that Plaintiff wished to assert a claim for injunctive relief to prevent Dr. Reeves from examining her again and for all future examinations be performed by a female gynecologist. (Doc. 142-1 at 2.) She explains that this omission was inadvertent. (*Id.*) Notably, however, not only is the request for this type of injunctive relief not sought in the complaint but facts needed to support this claim for relief were absent also. (Doc. 28.)

Third, when she filed her successful opposition to the motion for summary judgment in June 2015, Plaintiff *adamantly* denied under penalty of perjury that Dr. Reeves ever attempted a biopsy during the exam in July 2009. (Doc. 79 at 1-2.) She asserted, "On July 22, 2009, an endometrial biopsy was not attempted as Dr. Reeves stated in his Introduction . . . This is appauling [sic] and a unfathomable untrue statement and tactic to waste the Court's time." (*Id*.) She stated also, "Defendant Reeves now states on EX.B, Pg. 2, line 19, that he performed a PAP Smear and attempted an endometrial biopsy. Then on line 21 he states the procedure was performed to determine the cause of Plaintiff's purported abnormal bleeding. This is not true." (*Id*.) She then asserts, "Defendant Reeves contends that he did not know why Meadows' replied in that manner due to having had prior biopsies, even though on that day a biopsy never took place; Plaintiff was tired of being sexually abused and spoke out!" (*Id*. at 1-2.) She reports, "Defendant Reeves never spoke of any biopsy taking place on the 22nd Day of July, 2009, nor did LVN Moore; and Dr. Reeves follow-up notes did not mention this procedure." (*Id*. at 2.) Clearly, at the time she filed this declaration, she knew that she had not consented to any such procedure and knew that the records did not document either a consent form or that the procedure was ever attempted. Even now, though she seeks to assert a due process claim based upon the failure to obtain consent, she does not provide any evidence that she believes that he *did* perform this procedure. In light of the fact she had undergone this procedure in the past, the Court cannot accept that she could not have known had Dr. Reeves attempted this procedure.

Finally, even if Plaintiff did not appreciate that she could plead -- assuming she could do it honestly -- that Dr. Reeves attempted to perform a procedure without her consent, there is no explanation why her counsel failed to appreciate this fact and act immediately to seek to amend. At most, counsel argues that the deposition of Dr. Reeves confirmed that he claimed to have performed the biopsy in July 2009. (Doc. 128 at 9-10.) However, counsel admits that merely repeats of what he said under penalty of perjury in May 2015. (*Id*. at 10.) Likewise, despite her argument to the contrary, the deposition of Ms. Miller added little to what Plaintiff already knew. Apparently, the only new fact is that Ms. Miller authenticated the medical record and affirmed

that she did not recall Defendant attempting a biopsy. Notably, though Defendant attacked the documents produced by Plaintiff in May 2015 as lacking authentication, the Court rejected the attack and relied upon these records to deny the motion for summary judgment.[6] (Doc. 83 at 7.) The Court observed, "Plaintiff states that no biopsy was scheduled for that day and that no biopsy was performed. [Cite] Plaintiff submits that neither Defendant's notes nor those of LVN Moore, who was also present, indicate that a biopsy was to be performed or was initiated." (*Id*. at 5-6, internal citations omitted.) The Court observed further,

> Defendant's evidence that the procedure he was attempting to perform on Plaintiff (and the removal of instruments) was medically necessary does not negate Plaintiff's testimony that his actions involving her genitals were sexually aggressive while she lay vulnerable on the exam table. Indeed, Defendant presents no evidence that Plaintiff consented to this biopsy and she adamantly denies that she did. Defendant presents no evidence that, medically justified or not, he was entitled to perform the biopsy in any manner—let alone one that injured Plaintiff—without her permission.

*Id*. Thus, it is clear that the depositions of Defendant and Miller were not needed before Plaintiff could seek to amend her complaint. On the other hand, though the Court agrees Plaintiff could not have met the December 2014 deadline to amend her complaint, the Court cannot find that Plaintiff acted diligently to seek the amendment once she was in possession of facts that suggested the need for the amendment. Likewise, once counsel was appointed, the Court cannot find that the further delay to February 2017 was justified.

Moreover, if the new claim is permitted, the newly added defendant and the current one, would be entitled to attack the pleading. Given the imminence of the trial date, there is simply no time to do this and the trial would have to be continued. For a case that is five years old, this is untenable in light of the fact there was sufficient opportunity to raise the claim well before now. Modification is appropriate in instances where the district court determines that amendment "created no meaningful case management issues" and did not "infringe [ ] on the efficient adjudication of the litigation . . . based on the factual record already developed." *C.F. ex rel.*

---

[6] Because the Court accepted Plaintiff's declaration describing the events as reliable evidence upon which to find a triable issue of fact, the Court that does not accept that it was necessary to delay moving to amend the complaint until there was third party proof of the authenticity of the records. A plaintiff need not wait until she has conclusive proof before pleading; rather, she is required to plead first in order to define the contours of allowable discovery.

*Farnan v. Capistrano Unified Sch. Dist.*, 654 F.3d 975, 984 (9th Cir. 2011). That is not the situation here.

Finally, the Court rejects that there is prejudice to Plaintiff imposed by the refusal to modify the scheduling order based upon the fact that the Court previously dismissed her prior due process claim. This alone would not preclude a due process claim in the future given Plaintiff's past due process claim failed to be supported by *any* facts, let alone a claim of lack of informed consent.[7] Moreover, as to the injunctive relief claim against Kernan in his official capacity, this appears unlikely to bar suit by Plaintiff if she has made a current and timely demand that the CDCR provide her a female gynecologist and she could demonstrate an entitlement to a female doctor. However, even if it is barred, Plaintiff's lack of diligence disposes of the issue and the motion to amend the case schedule to allow the motion to amend must be **DENIED**.

## II.     Amendment of Pleadings -- Rule 15(a):

In any event, even if good cause existed under Rule 16 to allow the motion to be considered, the Court would deny the motion under Rule 15(a). *Johnson*, 975 F.2d at 608 (citing with approval *Forstmann v. Culp*, 114 F.R.D. 83, 85 (M.D.N.C. 1987). Federal Rule of Civil Procedure 15(a)(2) states "[t]he court should freely give leave [to amend a pleading] when justice so requires." The Ninth Circuit has repeatedly stressed that the standard for granting leave to amend is generous. *U.S. v. Corinthian Colleges,* 655 F.3d 984, 995 (9th Cir. 2011) (citations and quotations omitted); *see also Eminence Capital, LLC v. Aspeon, Inc.,* 316 F.3d 1048, 1051 (9th Cir. 2003); *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001)(quoting *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990)).

Despite this, amendment "is not to be granted automatically." *In re Western States Wholesale Natural Gas Antitrust Litig.*, 715 F.3d 716, 738 (9th Cir. 2013). To assess whether leave to amend should be granted requires the Court must consider whether: (1) the amendment is brought in bad faith; (2) whether there was undue delay; (3) whether there is prejudice to the opposing party; (4) whether the amendment is futile; and (5) whether prior amendment has

---

[7] Her bigger impediment appears to be the fact that a due process claim brought in the future based upon a lack of consent could constitute claim splitting.

occurred. *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227 (1962); *Loehr v. Ventura County Community College Dist.*, 743 F.2d 1310, 1319 (9th Cir. 1984).

These factors are not of equal weight; prejudice to the opposing party has long been held to be the most crucial factor in determining whether to grant leave to amend. *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) ("As this circuit and others have held, it is the consideration of prejudice to the opposing party that carries the greatest weight"); *Lone Star Ladies Inv. Club v. Schlotzsky's Inc.*, 238 F.3d 363, 368 (5th Cir. 2001) (Prejudice is the "touchstone of the inquiry under rule 15(a)."); *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1387 (9th Cir. 1990); *Howey v. United States*, 481 F.2d 1187, 1190 (9th Cir. 1973) (stating that "the crucial factor is the resulting prejudice to the opposing party"). The party opposing amendment "bears the burden of showing prejudice." *DCD Programs v. Leighton*, 833 F.2d 183, at 186-87 (9th Cir. 1987). Futility alone also justifies denial of leave to amend. *Bonin v. Calderon*, 59 F.3d 815 (9th Cir. 1995).

"Absent prejudice, or a strong showing of any of the remaining *Foman* factors, there exists a presumption under Rule 15(a) in favor of granting leave to amend." *Eminence Capital*, 316 F.3d at 1052 (citing *Lowrey v. Tex. A & M Univ. Sys.*, 117 F.3d 242, 245 (5th Cir. 1997)). This policy is 'to be applied with extreme liberality.'" *Id.*, at 1051 (quoting *Owens*, 244 F.3d at 712). However, granting or denying leave to amend a complaint is in the sound discretion of the Court, *Swanson v. United States Forest Service*, 87 F.3d 339, 343 (9th Cir. 1996), which "must be guided by the underlying purpose of Rule 15 -- to facilitate decision on the merits rather than on the pleadings or technicalities." *DCD Programs, Ltd.*, 833 F.2d at 186 (quoting *United States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981)).

**A.     Analysis**

    **1.     Due Process Claim Against Defendant**

        **a.     Prejudice & Bad Faith**

As noted above, Defendant presents evidence of prejudice if Plaintiff were allowed to add Kernan in his official capacity as a party to this action (Doc. 137, pp. 10, 17-18). Also, as noted

1  above, case management requirements dictates that the amendment not be permitted at this late

2  date. *Eminence*, 316 F.3d at 1052 ("As this circuit and others have held, it is the consideration of

3  prejudice to the opposing party that carries the greatest weight").

### b.  **Futility of Amendment**

5  Defendant argues that it would be futile to allow Plaintiff to add a due process claim

6  against him for his failure to obtain her consent to the biopsy since she failed to exhaust available

7  administrative remedies on any such claim which would require dismissal.  (Doc. 137, 11:6-13:4.)

#### (1)  **Exhaustion of Administrative Remedies**

9  Pursuant to the Prison Litigation Reform Act of 1995, "[n]o action shall be brought with

10  respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner

11  confined in any jail, prison, or other correctional facility until such administrative remedies as are

12  available are exhausted."  42 U.S.C. § 1997e(a).  Prisoners are required to exhaust available

13  administrative remedies prior to filing suit. *Jones v. Block*, 549 U.S. 199, 211 (2007); *McKinney*

14  *v. Carey*, 311 F.3d 1198, 1199-1201 (9th Cir. 2002).  Inmates are required to "complete the

15  administrative review process in accordance with the applicable procedural rules, including

16  deadlines, as a precondition to bringing suit in federal court." *Woodford v. Ngo*, 548 U.S. 81, 88

17  (2006).  Inmates must adhere to the "critical procedural rules" specific to CDCR's process. *Reyes*

18  *v. Smith,* --- F.3d ---, 2016 WL 142601, *2 (9th Cir. Jan. 12, 2016).  The exhaustion requirement

19  applies to all suits relating to prison life, *Porter v. Nussle*, 435 U.S. 516, 532 (2002), regardless of

20  the relief both sought by the prisoner and offered by the process, *Booth v. Churner*, 532 U.S. 731,

21  741 (2001).

22  Defendant asserts that Plaintiff's grievance did not suffice to exhaust claims that she

23  might now assert under the Due Process Clause for his failure to obtain her consent for the biopsy

24  Defendant asserts he was attempting to perform.  (Doc. 137, 11:6-13:4.)  Defendant argues that

25  Plaintiff's failure to exhaust is clear from the face of her proposed third amended complaint since

26  it refers to her July 23, 2009 inmate grievance in which she complained Defendant's acts in the

27  July 22, 2009 exam were sexually abusive.  (*Id.*)  Defendant refers to a copy of that grievance

28

1  which was attached as an exhibit to Plaintiff's original Complaint (*see* Doc. 1, pp. 4-12) and
2  argues that it contains no mention of lack of consent for a biopsy. (Doc. 137, p. 12.) Defendant
3  cites *Griffin v. Arpaio*, 557 F.3d 117 (9th Cir. 2009) and contends that Plaintiff's July 23, 2009
4  grievance did not suffice to alert the prison to the problem from which to facilitate resolution for
5  any issues as to informed consent for the July 22, 2009 procedure. (*Id.*)

6  Plaintiff correctly responds that in July 2009 when she filed her grievance, CDCR's
7  regulations did not impose any requirement for factual or legal specificity. (Doc. 142, pp. 3-4.)
8  Rather, the 2009 version of 15 Cal. Code of Reg. § 3084.2(a) simply required inmates "to
9  describe the problem and action requested." Plaintiff's July 23, 2009 grievance complained about
10 the gynecological examination performed by Defendant on July 22, 2009. (Doc. 1, pp. 4-12.) In
11 2009, CDCR's inmate grievance procedure was vague as to the level of specificity required by an
12 inmate. Where a prison's grievance procedures were silent, the allegations sufficed if they
13 generally notified the prison of a problem since "[t]he primary purpose of a grievance is to alert
14 the prison to a problem and facilitate its resolution, not to lay groundwork for litigation." *Griffin*,
15 557 F.3d at 1122, *ref Johnson v. Johnson*, 385 F.3d at 522, cited with approval in *Jones*, 549 U.S.
16 at 219. To this end, Plaintiff's July 23rd grievance, under the parameters applicable in 2009,
17 arguably placed prison officials on notice for any and all untoward events that occurred during the
18 July 22, 2009 examination. Thus, as to this claim, the amendment it is not futile due to lack of
19 exhaustion.

20 **(2)  Cognizability**

21 In this circuit, the failure of a doctor to obtain consent prior to performing a surgical
22 procedure on an inmate may violate the Fourteenth Amendment. *Runnels v. Rosendale,* 499 F.2d
23 733, 735 (9th Cir. 1974); *see also, Benson v. Terhune,* 304 F.3d 874, 884 (9th Cir. 2002)
24 (Fourteenth Amendment protects the right to be "free from unjustified intrusions into the body");
25 *Pabon v. Wright,* 459 F.3d 241, 253 (2nd Cir. 2006) (Fourteenth Amendment protects an
26 individual's liberty interest in making informed decisions that affect her health and bodily
27 integrity). There is a recognized "constitutional right to be free of unprovoked physical assault by
28

agents of the state while in state custody." *Runnels,* 499 F.2d at 735, citing *Brown v. Brown,* 368 F.2d 992 (9th Cir. 1966); *Wiltsie v. California Department of Corrections*, 406 F.2d 515 (9th Cir. 1968); *Allison v. California Adult Authority*, 419 F.2d 822 (9th Cir. 1969) *ref Johnson v. Glick*, 481 F.2d 1028, 1032-1033 (2d Cir. 1973). "Because of a prisoner's peculiar dependence and vulnerability in respect to medical treatment, the right to be secure in one's person could be violated by the substantial threat to physical security necessarily involved in major surgery, when such surgery is neither consented to nor required for purposes of imprisonment or security." *Runnels*, 499 F.2d at 735 (internal citation omitted). Toward this end, in the PTAC, Plaintiff alleges:

> 17. DR. REEVES contends that in addition to the pap smear and pelvic exam that he performed on MS. MEADOWS on July, 22, 2009, he initiated and attempted an endometrial biopsy on her. DR. REEVES claims that he initiated the endometrial biopsy on MS. MEADOWS by re-inserting the speculum, applying the tenaculum, and inserting a catheter inside of her cervix. DR. REEVES contends that MS. MEADOWS objected to the biopsy and reacted violently, thereby causing him to remove the instruments before completing the biopsy.
> 18. DR. REEVES contends that he obtained the verbal consent of MS. MEADOWS prior to initiating the endometrial biopsy but admits that he did not obtain her written consent for the surgical procedure.

(Doc. 127-1, PTAC, p. 5.) Thereafter, Plaintiff asserts a claim against Defendant for violation of the Due Process Clause of the Fourteenth Amendment. (*Id.*, at pp. 7-8.) However, Plaintiff's proposed amended complaint does not indicate that she did not verbally consent to the procedure in advance of its initiation, as Defendant contends. Rather, as phrased, the allegations demonstrate Plaintiff withdrew her consent during the procedure and that Dr. Reeves responded by stopping the procedure. On its face, this does not state a claim for a violation of due process.[8]

However, a proposed amended complaint is futile "only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense." *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988). Though the proposed amended counterclaim is vulnerable to a motion to dismiss, the Court is not assured that the cause of action could not survive and it is, therefore, not futile.

---

[8] The Court understands that there is evidence, notably Plaintiff's declaration filed in June 2016 (Doc. 78), in which she denies she consented but, the Court must evaluate the claim as stated in the PTAC. Though 15 C.C.R. § 3353 requires written consent, violation of this statutory provision alone does not give rise to a constitutional deprivation.

### c. Undue Delay

Defendant argues that there is no justifiable explanation for Plaintiff's delay in seeking leave to amend as she was put on notice of Defendant's arguments in May 2015 and that she had personal knowledge whether Defendant attempted a surgical procedure on her on July 22, 2009, without obtaining written consent. (Doc. 137, 9:1-9.) The Court agrees for the reasons previously discussed under Rule 16. Thus, Plaintiff has not met her burden of demonstrating that she did not unduly delay in seeking amendment.

### d. Prior Amendment

Defendant argues that "Plaintiff is not entitled to a fourth bite of the apple." (Doc. 137, 8:20-27.) Defendant relies on *Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1984) for the proposition that the district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint. (*Id.*)

Here, Plaintiff was *pro se* during much of this action but also has had counsel for roughly the last year, in addition to the period when she last amended her complaint. (Doc. 130 at 1-2.) Though Plaintiff is not educated in the requirements of law, her attorney is. Thus, her unrepresented status does not adequately explain her failure to seek amendment until now, when she also continues to fails to state a cognizable due process claim. In light of the fact Plaintiff has amended her complaint numerous times with and without counsel, this factor weighs against further amendment.

Accordingly, when the potential prejudice to Defendant, futility of amendment, undue delay by Plaintiff, and Plaintiff's multiple prior amendments to her pleadings are weighed, the Court finds that factors weigh against granting Plaintiff's motion for leave to amend to add a due process claim against Defendant and it is **DENIED**.

### 2. Injunctive Relief Against CDCR/Kernan

Plaintiff argues that she has now obtained sufficient evidence to adequately support the reinstatement of her claim for injunctive relief. (Doc. 128, pp. 18-19.) By seeking to name Kernan in his official capacity, Plaintiff seeks to impose liability directly against the CDCR solely

1  to obtain injunctive relief. To this end, Plaintiff agrees that the requirement for permanent

2  injunctive relief is (1) irreparable injury, and (2) the inadequacy of legal remedies. (*Id.,* (citing

3  *Weinberger v. Romero-Barcelo,* 456 U.S. 305, 312 (1982); *Stanley v. Univ. of Southern Calif.*, 13

4  F.3d 1313, 1320 (9th Cir. 1994)).) However, Plaintiff contends that proof of a constitutional

5  infringement alone may be sufficient to constitute irreparable injury. (*Id.*, (citing *Monterey*

6  *Mechanical Co. v. Wilson,* 125 F.3d 702, 715 (9th Cir. 1997) (quoting *Associated General*

7  *Contractors v. Coalition for Economic Equity,* 950 F.2d 1401, 1412) (9th Cir. 1991)).)

8        Defendant responds that Plaintiff's demand for injunctive relief is moot (since he is retired

9  and has not worked at CCWF since 2009) (Doc. 137, 13:10-14:12); that there is no realistic threat

10  of repetition of the acts of which Plaintiff complains in this action (*id.*, 14:13-27); and that

11  Plaintiff cannot pursue relief for other inmates (*id.*, 15:1-5).

12        Plaintiff replies that she remains in custody at CCWF and that there is no female

13  gynecologist for the female inmates there. (Doc. 142, p. 7.) Plaintiff asserts that Defendant

14  sexually abused a number of other inmates at CCWF (*id.*, p. 7-8), but that their requests for access

15  to a female gynecologist have been ignored (*id.*, p. 8), that this Court need not wait until another

16  gynecologist sexually abuses inmates at CCWF to grant the injunctive relief she requests[9] (*id.*, p.

17  8), and that the injunction she requests is narrowly tailored, seeking the least intrusive means to

18  remedy her constitutional violations (*id.*, p. 9).

19              **a.**    **Legal Standards**

20        The Supreme Court has repeatedly held that the basis for injunctive relief in the federal

21  courts has always been irreparable injury and the inadequacy of legal remedies. *Rondeau v.*

22  *Mosinee Paper Corp.*, 422 U.S. 49, 61 (1975); *Sampson v. Murray*, 415 U.S. 61, 88 (1974);

23  *Beacon Theaters, Inc. v. Westover,* 359 U.S. 500, 506-507 (1959); *Hecht Co. v. Bowles*, 321 U.S.

24  321, 329 (1944). However, "injunctive relief is designed to deter future misdeeds, not to punish

---

[9] Plaintiff fails to explain how providing a female gynecologist relieves the risk posed during a gynecological exam. Notably, though she did not claim Dr. Romero—a female—sexually assaulted her in 2008, Plaintiff *did* claim Dr. Romero used her fingers for the vaginal examination "hurt [her] really bad" and that Dr. Romero improperly pushed down on her stomach while doing so, which caused her injury and subjected her to "neglect and unprofessional" behavior. (Doc. 137-1 at 15-18)

past misconduct." *Orantes-Hernandez v. Thornburgh*, 919 F.2d 549, 564 (9th Cir. 1990) (citing *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953); *Loya v. INS*, 583 F.2d 1110, 1114 (9th Cir.1978)).

A plaintiff seeking prospective injunctive relief "must demonstrate that he has suffered or is threatened with a 'concrete and particularized' legal harm, coupled with 'a sufficient likelihood that he will again be wronged in a similar way.' " *Bates v. United Parcel Service, Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983) ). Likelihood that a plaintiff will again be wronged in a similar way is established by a "real and immediate threat of repeated injury." *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974).

"[P]ast wrongs do not in themselves amount to [a] real and immediate threat of injury necessary to make out a case or controversy." *Lyons*, 461 U.S. at 103. While past wrongs may be considered as evidence "bearing on whether there is a real and immediate threat of repeated injury," *O'Shea*, 414 U.S. at 496, permanent injunctive relief is only warranted where the "defendant's past *and present* misconduct indicates a strong likelihood of future violations," *Ornates-Hernandez*, 919 F.2d at 564 (emphasis added) (citing *Green v. McCall*, 822 F.2d 284, 293 (2nd Cir.1987) (permanent injunctive relief appropriate in light of U.S. Parole Commission's repeated failure to comply with preliminary injunction and with its own procedures in past); *United States v. An Article of Drug*, 661 F.2d 742, 747 (9th Cir.1981) (permanent injunction proper because appellant continued to distribute drug despite jury's finding that it had no "safe and effective use").

Requests for prospective injunctive relief by inmates are limited by 18 U.S.C. § 3626 (a)(1)(A) of the Prison Litigation Reform Act, which requires that the Court ensure the relief "is narrowly drawn, extends no further than necessary to correct the violation of the Federal Right, and is the least intrusive means necessary to correct the violation of the Federal Right."

Here, Plaintiff's claims are based on Defendant's actions during gynecological examination of her from 1998 to 2009 -- particularly July 22, 2009. However, Defendant is

retired and has not worked at CCWF since 2009. (Doc. 137, p. 13 citing Doc. 127-1, p. 2.) Thus, Plaintiff cannot demonstrate that the harm which is the basis for this action, is continuing and is likely be repeated.

Plaintiff contends that she is one of many inmates who suffered abusive gynecological exams by Defendant and that she and many others were required to endure the abusive exams by Defendant because he was the only gynecologist available to high-risk gynecology patients at CCWF despite repeated requests for a female gynecologist. (Doc. 128, p. 19.)[10] Plaintiff argues this is irreparable injury that no amount of money can remedy entitles her to injunctive relief. (*Id.*) However, the Supreme Court has held the irreparable injury requirement "cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged again...." *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983). Even if it is assumed that Defendant sexually abused Plaintiff, any such finding would not provide basis to find that every male gynecologist who hereafter cares for female inmates at CCWF will necessarily abuse them.

Given that Defendant is retired and has not worked at CCWF since 2009, Plaintiff cannot show that Defendant continues to abuse her, or that she is likely to be subjected to an abusive gynecological examination by Defendant in the future. Further, Plaintiff does not submit any evidence to suggest that she has been abused by other male gynecologists at CCWF, or that she is likely to be subjected to as much in the foreseeable future. (*See* Docs. 128, 142.) Though, ideally, inmates would be permitted to elect the gender of the doctors who provide them care, this action, which is based on Defendant's alleged assaultive actions towards Plaintiff, is not the proper vehicle for the remedy Plaintiff seeks.

Further, Plaintiff apparently seeks injunctive relief via access to a female gynecologist on behalf of all female inmates at CCWF. A prisoner cannot bring claims on behalf of other prisoners. *See Weaver v. Wilcox*, 650 F.2d 22, 27 (3d Cir. 1981); *Miner v. Brackney*, 719 F.2d 954, 956 (8th Cir. 1983) (per curiam), *cert. denied*, 467 U.S. 1259 (1984); *Carter v. Romines*, 560

---

[10] Though Plaintiff cites to evidence which was submitted for *in camera* review, and which she has moved to file under seal for purposes of this motion, (Doc. 131), that request is DENIED since she fails to show a "real and immediate threat of repeated injury," *O'Shea*, 414 U.S. at 496.

F.2d 395, 395 (8th Cir. 1977) (per curiam), *cert. denied*, 436 U.S. 948 (1978). A prisoner must allege a personal loss. Therefore, Plaintiff lacks standing to pursue injunctive relief on behalf of other female inmates. Finally, though Plaintiff seeks to submit declarations from other female inmates who allege they were abused by Defendant in gynecological examinations, this action is proceeding solely on Plaintiff's allegations of abuse by Defendant when he examined Plaintiff. Whether Defendant abused other CCWF inmates when he performed their gynecological examinations might be fodder for a different action, this cannot be raised here as the factual predicate for injunctive relief on the eve of trial.

Accordingly, Plaintiff's motion to amend to add Kernan to request injunctive relief need not be granted since futile. *Bonin v. Calderon*, 59 F.3d 815 (9th Cir. 1995) (futility alone justifies denial of leave to amend). Thus, because Plaintiff's motion to be allowed to amend her pleading to add Kernan and a request for injunctive relief via access to a female gynecologist at CCWF is **DENIED** since futile.

### 3.     Reconsideration

Alternatively, Plaintiff requests reconsideration[11] of the screening order that issued on August 12, 2013 (Doc. 42) to the extent it dismissed all defendants other than Dr. Reeves. (Doc. 128, pp. 20-21.)

Rule 60(b) of the Federal Rules of Civil Procedure provides that "[o]n motion and upon such terms as are just, the court may relieve a party . . . from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud . . . , misrepresentation, or misconduct by an opposing party; . . . or (6) any other reason justifying relief from the operation of judgment." Motions under Rule 60(b) "must be made within a reasonable time -- and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding."

---

[11] Plaintiff's motion for reconsideration need only be addressed for purposes of resurrecting her request for injunctive relief since, as previously discussed, her request for leave to amend to add a due process claim against Defendant is being granted.

Relief under Rule 60 "is to be used sparingly as an equitable remedy to prevent manifest injustice and is to be utilized only where extraordinary circumstances" exist. *Harvest v. Castro*, 531 F.3d 737, 749 (9th Cir. 2008) (internal quotations marks and citation omitted) (addressing reconsideration under Rules 60(b)(1)-(5)). The moving party "must demonstrate both injury and circumstances beyond his control . . . ." *Id.* (internal quotation marks and citation omitted). Local Rule 230(j) requires, in relevant part, that Plaintiff show "what new or different facts or circumstances are claimed to exist which did not exist or were not shown" previously, "what other grounds exist for the motion," and "why the facts or circumstances were not shown" at the time the substance of the order which is objected to was considered.

"A motion for reconsideration should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law," and it "may *not* be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 880 (9th Cir. 2009) (internal quotations marks and citations omitted) (emphasis in original).

Plaintiff asserts that when the screening order issued in August 2013, she did not have the benefit of discovery and information her counsel was subsequently able to gather to support her injunctive relief claim. (Doc. 128, pp. 20-21.) Plaintiff asserts that she did not have the ability to discover such information in 2013 because formal discovery had not yet begun in her case and her request to conduct discovery had been denied as premature. (*Id.*, citing Doc. 42 at p.2.) Plaintiff argues that counsel obtained new evidence which establishes an ongoing need for a female gynecologist at CCWF. (*Id.*) However, Plaintiff provides no legal authority to support her proposition that previously proceeding *pro se* and subsequently being represented by counsel who discovered evidence provides justification for failing to discover and present evidence while *pro se*. Further, the consideration Plaintiff's current motion to amend has already effectively operated as reconsideration but which, for the reasons discussed above, is found futile.

Additionally, Plaintiff's reliance on evidence of other inmates' complaints regarding Defendant is misplaced.  As discussed above, this action is proceeding on Plaintiff's claims against Defendant based on his conduct during her gynecological examinations.  This is not a class action and Plaintiff is not representing the rights of any other inmates.  Experiences by other inmates during gynecological examinations do not provide justification for sweeping injunctive relief in this action unrelated to Defendant.

Further, Plaintiff's motion, filed on February 8, 2017, nearly three and a half years beyond Ryle 60(b)'s one year deadline, is untimely.  Accordingly, Plaintiff's alternative request for reconsideration of the August 2013 screening order is **DENIED**.

**ORDER**

As set forth herein, this Court finds that Plaintiff has shown good cause to modify the Discovery and Scheduling Order and her motion to amend the Second Amended Complaint is **DENIED**.

IT IS SO ORDERED.

Dated:   __March 24, 2017__              ___/s/ Jennifer L. Thurston__
                                         UNITED STATES MAGISTRATE JUDGE